# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SHEILA VAUGHT,

    Plaintiff,

v.

THE HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY,

    Defendant.

Case No. 1:11-cv-227

Weber, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Sheila Vaught filed a complaint claiming wrongful termination of long-term disability benefits and seeking reinstatement of benefits pursuant to the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1132. This matter is now before the Court on the parties' cross-motions for judgment (Docs. 21, 22) and their responsive memoranda. (Docs. 24, 25, 28, 29). The pending motions have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. § 636(b). (Doc. 30).

**I. Background**

**A. Relevant Provisions the Disability Benefits Plan**

Plaintiff Sheila Vaught was employed by DaVita Inc., as a registered nurse. (Doc. 18, Administrative Record ("AR", at 2). As part of her employment, Plaintiff was a participant in an employee benefit plan issued by Hartford Life & Accident Insurance Company ("Hartford") to policyholder DaVita Inc. The Plan entitles a participant to long-term disability ("LTD") benefits upon Hartford's determination that a participant is disabled. (AR 15). Under the Plan, "Disability or Disabled" is defined as

1. during the Elimination Period[1], you are prevented from performing one or more of the Essential Duties[2] of Your Occupation;

2. for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than eighty percent of your Index Pre-disability Earnings;

3. after that, you are prevented from performing one or more of the Essential Duties of Any Occupation.[3]

(AR 27).

The Plan gives Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provision of the Policy. The Plan further provides that benefit payments will terminate on the date that a participant is no longer Disabled as defined by the Plan. (AR 16).

Additionally, upon denial of a claim (including termination of benefits), the Plan provides that a participant can submit an appeal to Hartford for a "full and fair review" of the claim. (AR 43). The appeal must be filed within 180 days of the date the claim was denied. The Plan requires Hartford to make a final decision on the appeal within 45 days. The 45 day period may be extended upon notification to the participant that an extension is necessary due to special circumstances.

---

[1] The participant must be continuously disabled for a 90-day elimination period to be eligible for benefit payments. (AR 13).
[2] "Essential Duty" means a duty that: (1) is substantial, not incidental; (2) is fundamental or inherent to the occupation; and (3) can not be reasonably omitted or changed. (AR 27).
[3] Any Occupation means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance. (AR 26).

**B. Plaintiff's Medical History and Administrative Record**

On September 14, 2006, Plaintiff requested short term disability ("STD") benefits under the Plan. (AR 49-50). Plaintiff advised Hartford that she was experiencing extreme fatigue, mood swings, trouble sleeping, persistent joint pain and weight loss. (AR 50). She had been diagnosed with Hepatitis C approximately fifteen years before and started interferon treatment in February 2006. On September 12, 2006, gastroenterologist Dr. Mark Jonas opined that Plaintiff's impairments and resulting side effects would prevent her from working for six weeks, until November 1, 2006. (AR 1139-41). At that time, Dr. Jonas also referred Plaintiff to psychiatrist Dr. Wu and rheumatologist Dr. Louis Flaspohler.

Plaintiff saw Dr. Wu on October 28, 2006. (AR. 1091-97). Dr. Wu diagnosed depression secondary to her medical condition and/or medications, placed her on Elavil and referred her for psychotherapy. (AR 1095-97). Thereafter, Plaintiff consulted with Dr. Flaspohler, a rheumatologist, on November 1, 2006. (AR. 1075-78). He diagnosed arthralgias, trochanteric bursitis and osteoarthritis, and suspected cryoglobulinemia.

Hartford approved Plaintiff's claim for STD benefits from September 13 through October 24, 2006, and then extended it until October 31, 2006. (AR. 48-49, 1144).

In mid-December 2006, Plaintiff applied for long term disability ("LTD") benefits. (AR 143, 1127-28). During her interview with Hartford, she stated that her knees, elbows and feet were inflamed, that it was difficult for her to move, and that it was painful to walk up stairs. (AR 143-44). She submitted Attending Physician Statements

3

from Dr. Wu and from her primary care physician, Dr. Jeffrey Craig. (AR 1081-88, 1100-01).

Dr. Wu listed a primary diagnosis of major depression secondary to medical illness, and a secondary diagnosis of acute withdrawal from medication. She opined that Plaintiff was unable to work because of disruptive crying spells, inability to maintain consistent social composure, poor concentration, anxiety, a slow response rate, low productivity, unable to complete tasks in a timely manner, fatigue, demoralization, hopelessness, impaired memory and an impaired thinking process. (AR. 1081, 1083).

Dr. Craig gave a primary diagnosis of chronic active Hepatitis C and secondary diagnoses of chronic depression, chronic pain and narcotic dependence. He stated that Vaught could only walk up and down steps twice a day, had joint pain, depression and short term memory loss, and needed help to stand after squatting.

On January 25, 2007, Hartford reviewed the file and concluded that Plaintiff met the definition of Disability for her mental condition, but that "[f]unctionality related to the physical condition is still being investigated." On January 29, 2007, Hartford advised Plaintiff that it had approved her claim for LTD benefits effective December 12, 2006 under the Mental Illness provision of the Plan, which limits benefits to a maximum of 24 months. (AR 329-32).

On May 10, 2007, Hartford reviewed Plaintiff's file to determine whether the physical portion of her claim was properly supported. Hartford concluded that Plaintiff was unable to work due to restricted range of movement in her shoulder, proximal decreased strength, residual carpal tunnel syndrome, arthritis and debilitation

4

secondary to hepatitis C. (AR. 154, 1064-67). Hartford subsequently adjusted its system to reflect that Plaintiff's claim was based upon a physical disability. (AR 155).

Thereafter, Hartford monitored Plaintiff's condition and continued to pay LTD benefits, first under the "Own Occupation" provision of the Plan (until December 2008) and then under the "Any Occupation" provision of the Plan. As required by the Plan, Plaintiff continued to stay in contact with Hartford about her condition and submitted reports from her treating doctors throughout 2008 and 2009.

On June 30, 2009, Hartford reviewed Plaintiff's claim file and referred it for investigation because "reported limitations appear excessive given the provided information. The claimant reports ongoing symptomatology but the medical indicates minimal abnormal findings." (AR 198, 414). Hartford determined that surveillance was appropriate and requested 20 hours of surveillance from a third-party vendor. (AR 417).

Surveillance was performed at Plaintiff's residence on July 11 and 12, 2009. No activity was observed on July 11. During the afternoon of July 12, Plaintiff was observed to walk in the back yard with a long handled, pooper scooper tool in each hand. She bent over and picked up an object, then walked out of sight. (AR. 756).

Additional surveillance was performed on September 2 and 3, 2009. (AR. 417). On September 2, Plaintiff was observed driving from her residence to a medical appointment, where she exited her car and went into the building. After her appointment, she drove to a grocery store. Thereafter, she returned to her residence and was not observed any further that day or the next day. The surveillance

investigator noted that the side of Plaintiff's car had an advertisement for Genewize. (AR. 749-55).

Hartford reviewed the September 2 video and concluded that it showed Plaintiff "walking with a smooth even gait without any assistive devices; standing; entering her vehicle without any outward difficulty; twisting at the waist while she put a large purse in the back seat; conversing on a cellular phone while driving; backing up her vehicle; visiting greater than [an] errand in a single outing." Hartford also noted that Plaintiff had "a possible business listed on the side of her vehicle associated to [her] name and home phone number."

The final surveillance was conducted on November 2, 2009. Plaintiff was not observed on that day. However, the investigator located information about Plaintiff's Genewize business on the Internet and forwarded it to Hartford. (AR 419, 745-48, 762-61). In her online profile section, Plaintiff stated that she loves to quilt, "use[s] power tools and do[es] most of the handy work around the house." (AR 763). After describing the multiple medical issues that led her to go on long term disability, she stated that she then was introduced to Genewize: "Things are much better now and when we talk I will tell you the results of my body since I have been on the product since February 2009." (AR 764-65). The investigator also noted that her nursing license was current. (AR 746, 761).

Hartford scheduled an in-person interview with Plaintiff on January 25, 2010. (AR. 744). Early in the interview, Plaintiff signed a Continuing Disability Statement which outlined her mental and physical impairments and resulting functional limitations,

daily medication and daily activities. (AR 684). The Statement also indicated that Plaintiff would like to go back to school and become a Nurse Educator and would like Hartford to pay for her schooling. *Id.*

When asked about returning to work, Plaintiff stated that no accommodations could allow her to return to work. She could not do any kind of work at the present time due to her medical conditions. She had not worked for a company, store, person, business or self-employed business while receiving LTD benefits. She had not volunteered to do any work activities and had not received any business income. She also reported that she had been notified on January 11, 2010 that she was approved for Social Security Disability benefits. (AR 692-93).

After Plaintiff signed her first statement, Hartford's investigator told her about Hartford's surveillance and investigation, and she dictated and signed a second Continuing Disability Statement. (AR 694-96). Plaintiff admitted that she had become an affiliate of a company called Genewize, sold the product to a couple of friends and family members, and made about $150.00 that she would probably report on her taxes. After watching the surveillance video, she stated that her activities on the video represented a normal level of functionality for her. (AR 695-96).

In April 2010, Hartford reviewed this information and concluded that Plaintiff "appears capable [of] greater activity tha[n] reported." Plaintiff's file was then referred to MCM (medical case management) for review and clarification of her residual functional abilities. (AR 208). On April 27, 2010, a Hartford nurse reviewed the claim file and

7

identified several inconsistencies between Plaintiff self-reported levels of function and activity information in the medical records and surveillance video.

Specifically: (1) she claimed not to be working or involved in any business but admitted that she sold Genewize products and was being paid to babysit her grandchild; (2) she claimed to be unable to work but reported maintaining two state nursing licenses, taking continuing education classes and wanting to go back to school to get a bachelor's degree and become a nurse educator; (3) she claimed to be fatigued but attended antique shows on the weekends and used her treadmill; (4) she claimed not to have full use of her hands but had no observed difficulty handling multiple items and driving on the surveillance video, and also reported doing sewing; (5) she claimed to have balance problems but these were not observed; and (6) she was observed to have a functional range of motion and could drive, walk, stand, lift, bend and reach without hesitation or the use of assistive devices. (AR 210). The nurse further concluded that medical records did not support the level of disability claimed by Plaintiff, and found that Plaintiff "appears to have greater function than previously reported." (AR 211).

On April 29, 2010, Hartford sent the surveillance records to Dr. Flaspohler, Dr. Jonas, Dr. Wu and Ms. Christianson, and asked them to comment on Plaintiff's maximum level of function. (AR 270-81). Dr. Flaspohler responded that "[t]his was not evaluated by me" and that "[g]enerally I do not deal with disability." (AR 546). Ms. Christianson replied that the requested information was beyond her area of expertise and that she would defer to Dr. Wu's judgment. (AR. 476-79). Dr. Wu replied that she was "not capable of filling these forms out." (AR 480).

Dr. Jonas returned the completed form to Hartford. He did not, however, provide a rationale or supporting documentation, and instead wrote "Full letter dictated 5/11/10." (AR 522). He did not send that letter to Hartford. (AR 213).

Hartford referred the claim to a vendor for review by an internal medicine specialist and a psychiatrist. (AR 216, 470-71). The reviews were performed by Dr. Rakesh Vinayek (Board Certified in Internal Medicine, sub specialty certificate in Gastroenterology and added expertise in Hepatology) and Dr. Michael Rater (Board Certified in Psychiatry).

In their reports dated June 14, 2010, both reviewers opined that Plaintiff was capable of full-time work. Internal Medicine specialist Dr. Vinayek spoke to Plaintiff's gastroenterologist, Dr. Jonas, who informed him that "from a GI perspective, [Plaintiff] has no issues which should prevent her from working. She may have other medical issues which could impair her functional status but those issues should be addressed by other specialists." (AR 463). After reviewing all of the medical records and the surveillance evidence, Dr. Vinayek concluded that her Hepatitis C had been stable with no associated restrictions or limitations. Her fatigue was likely caused by the medications she was taking. She had some restrictions on lifting due to her underlying history of cervical spondylosis and rheumatoid arthritis. He opined that she could work up to a light physical demand level without any restriction on walking, standing, bending or reaching, and with a restriction of lifting 10 pounds frequently and 20 pounds occasionally. (AR 464-65).

Psychiatrist Dr. Rater attempted to contact Dr. Wu to discuss Plaintiff's claim. Dr. Rater was advised to submit his questions to Dr. Wu in writing; which he did, and received no response. After reviewing the medical records, Dr. Rater concluded that there were no restrictions from a psychiatric/cognitive function perspective.

Hartford then conducted an employability analysis. (AR. 438-56). Hartford's Rehabilitation Case Manager concluded that based on the identified restrictions, educational background and experience, Plaintiff could work as an Office Nurse, First-Aid Attendant, License Clerk, Referral Clerk (Temporary Help Agency) or Routing Clerk, and the median monthly wages would meet or exceed the required monthly earnings potential. (AR 438-40).

In a detailed letter dated July 2, 2010, Hartford advised Plaintiff that the evidence did not support a continued finding of Disability and that no further benefits would be paid. (AR 260-66). Hartford summarized Plaintiff's statements and medical records and described the reviews performed by Hartford and peer reviewers Dr. Vinayek and Dr. Rater. (AR 262-65). Hartford concluded that "the medical evidence and investigative information on file no longer supports that you are Disabled as defined by the policy and the evidence supports that you are capable of performing alternative occupations." Hartford further advised Plaintiff of her right to appeal within 180 days, and stated that if Hartford were to again deny her claim upon appeal, Plaintiff would then have the right to bring a civil action under ERISA. (AR 265-66).

On December 15, 2010, Plaintiff's counsel submitted a letter to Hartford formally appealing Hartford's denial of her claim for long-term disability benefits. (AR 137-139).

The letter asserts that Plaintiff's counsel is "enclosing a recent report from Dr. Dain, Wahl, Ms. Vaught's primary care doctor," in support of Plaintiff's claim of continuing disability. (AR. 138). However, the report was not attached to the letter. Hartford ultimately received Dr. Wahl's report on January 28, 2011. (AR 105-06, 23). Hartford then advised Plaintiff that because the appeal became complete on January 28, Hartford's 45-day period to make a decision would end March 14, 2011. (AR. 250). Thereafter, on March 9, 2011, Hartford informed Plaintiff's counsel that Hartford could not make a decision during the initial 45-day period because it was still awaiting updated records from Dr. Jonas and Dr. Flaspohler. (AR. 244). Upon receipt of those records, Hartford referred the appeal to a third-party vendor for review by another internal medicine specialist and another psychiatrist. In a March 15, 2011, letter to Plaintiff's counsel, Hartford determined that a comprehensive co-morbid medical review was needed before completing their evaluation. Hartford further represented that it expected to render its appeal decision by April 24, 2011. (AR. 237).

Plaintiff filed the instant action against Hartford on March 11, 2011, in the Hamilton County Court of Common Pleas, seeking reinstatement of long term disability benefits. (Doc. 1, Ex. A). On March 17, 2011, Hartford received notice that Plaintiff had filed this lawsuit. Hartford immediately notified the third-party vendor to suspend its medical review of Plaintiff's file. (AR 236). Thereafter, Hartford removed the case to this Court on April 18, 2011. (Doc. 1). This matter is now before the Court on the parties' cross motions for judgment on the administrative record. (Docs. 21, 22).

**II. Analysis**

**A. Standard of Review and Applicable Law**

In adjudicating an ERISA action, the Sixth Circuit has directed the district court to use the following steps: (1) the district court should conduct a de novo review in consideration of the action's merits based solely upon the administrative record; the district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator; (2) the district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision and any prehearing discovery at the district court level should be limited to such procedural challenges; (3) the summary judgment procedures set forth in Rule 56 are inappropriate for ERISA actions and thus should not be utilized in their disposition. *See Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619-620 (6th Cir. 1998).

Further, pursuant to *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003), a court must determine whether an ERISA plan gives the administrator authority to determine eligibility for benefits or to construe the plan's terms. *Id.* (*citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, (1989)). When an ERISA plan grants the plan administrator discretionary authority to determine benefit eligibility, as the Plan at issue in this case does, the district court must review the plan administrator's decision under the arbitrary-or-capricious standard. *Id.*

An outcome is not arbitrary or capricious where the evidence supports a reasoned explanation for that particular outcome. *See Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998). Under this standard, the administrator's decision is to be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (*quoting Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)), *aff'd*, 128 S. Ct. 2343 (2008). While arbitrary and capricious review is deferential, it "is no mere formality [,]" and the court must consider "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Glenn*, 461 F.3d at 666. Though a plan administrator may be vested with discretion, the court does not review the administrator's decision merely to "rubber stamp [the] decision." (*Id.*). In this case, the parties agree that this Court's review is under the arbitrary and capricious standard.

Furthermore, where, as here the Defendant acts as both the Plan Administrator and Plan Insurer, these dual roles create a conflict of interest which the Court must consider as a factor when evaluating whether Defendant abused its discretion by denying the benefits claim. *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 108 (2008). Thus, when there is a conflict of interest, "the reviewing judge should take account of that circumstance as a factor in determining the ultimate adequacy of the record's support for the agency's own factual conclusion." *Id.* at 119 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 492–97, 71 (1951)).

Additionally, when determining if a benefits decision is arbitrary, a court should give weight to the decision of the Social Security Administration. *DeLisle v. Sun Life Assur. Co. Of Canada*, 558 F.3d 440, 445 (6th Cir. 2009). Although not dispositive, a decision by the SSA is a significant factor to be considered, particularly when, as here, Defendant: (1) required Plaintiff to apply for Social Security; (2) benefitted financially from the receipt of Social Security; and (3) did not explain why it reached a different outcome than the SSA. *Combs v. Reliance Standard Life Ins. Co.*, No. 2:08cv102, 2009 WL 2902943 (S.D. Ohio Sept. 8, 2009) (citing *DeLisle* at 446, *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008)).

### B. The Parties' Cross-Motions for Judgment

Hartford's motion for judgment on the administrative record asserts that its decision to terminate Plaintiff's claim for benefits was reasonable and neither arbitrary or capricious as the administrative record did not support Plaintiff's claim that she was disabled. In the alternative, Hartford argues that Plaintiff's claim should be remanded back to the Plan Administrator because Plaintiff filed this action before Hartford issued a decision on her appeal. As such, Hartford asserts that Plaintiff has failed to exhaust her administrative remedies as provided by ERISA. Additionally, Hartford moves for judgment on its counterclaim to recover benefits overpaid to Plaintiff in light of a retroactive DSSD award.

Plaintiff's motion for judgment, however, asserts that Hartford's decision to deny Plaintiff's claim for long-term disability benefits was arbitrary and capricious because the record does not contain sufficient evidence that Plaintiff's condition improved since

14

Hartford's initial award of benefits.  Further, in determining that Plaintiff was no longer entitled to long-term disability payments as of July 2010, Plaintiff argues that Hartford improperly relied on the findings of independent medical reviews, video surveillance of Plaintiff and the employability analysis report generated in June 2010.  Plaintiff also maintains that Hartford's decision is unreasonable because of its conflict of interest as both the Plan Administrator and Plan Insurer, as well as its failure to consider Plaintiff's award of Social Security Disability benefits.  With respect to Hartford's alternative request to remand, Plaintiff asserts that Hartford "unilaterally delayed ruling on her appeal for so long that the appeal would be viewed by any reasonable person as having been constructively denied."  (Doc. 24 at 5).  Last, Plaintiff asserts that Hartford has not shown that it is entitled to judgment on its counterclaim for reimbursement for overpayment, because the monies Hartford is seeking was not paid to Plaintiff, the beneficiary, but rather to a third-party, her son.

Upon careful consideration of the administrative record and the arguments of counsel, the undersigned finds that the Hartford's administrative review of Plaintiff's claim has not been fully exhausted, and therefore, this matter should therefore be remanded for further proceedings.

### B.  Remand is appropriate

The Sixth Circuit Court of Appeals recognizes the holding in the vast majority of circuits and interprets ERISA to require that a claimant exhaust his or her administrative remedies prior to filing suit in a court of law:  "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing

suit in federal court." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). The Court of Appeals based its decision on 29 U.S.C. §1133(2) which states that "[e]very employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Id.*

The rationale underlying the exhaustion requirement is that "review or exhaustion enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000)(citations omitted). *See also Wilczynski v. Lumberman's Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996) (exhaustion of administrative remedies enhances the ability of plan fiduciaries to expertly and efficiently manage their plan by preventing premature judicial intervention and assists the courts by ensuring that a plaintiff's claims have been fully considered by plan fiduciaries). The exhaustion requirement also gives effect to Congress' apparent intent, in mandating internal claims procedures, to promote consistent treatment of claims, to provide a non-adversarial dispute resolution process, to decrease the cost and time of claims settlement, and to minimize frivolous lawsuits. *Wilczynski,* 93 F.3d at 402 *(citing Powell v. AT&T Communications, Inc.*, 938 F.2d 823 (7th Cir. 1991)).

In this case, Plaintiff filed the instant action for wrongful termination of disability benefits before Hartford issued a decision on her appeal of Hartford's decision to terminate benefits. Notably, the record reflects:

On December 15, 2010, Plaintiff's counsel submitted a letter to Hartford formally appealing Hartford's denial of her claim for long-term disability benefits indicating that a report of Dr. Wahl was attached.. (AR 137-139). Hartford received Dr. Wahl's report in support of Plaintiff's claim on January 28, 2011. (AR. 105-06, 23). Hartford then advised Plaintiff that because the appeal became complete on January 28, Hartford's 45-day period to make a decision would end March 14, 2011. (AR. 250).

Thereafter, on March 9, 2011, Hartford informed Plaintiff's counsel that Hartford could not make a decision during the initial 45-day period because it was still awaiting updated records from Dr. Jonas and Dr. Flaspohler. (AR 244). Upon receipt of those records, Hartford referred the appeal to a third-party vendor for review by another internal medicine specialist and another psychiatrist. In a March 15, 2011, letter to Plaintiff's counsel, Hartford determined that a comprehensive co-morbid medical review was needed before completing their evaluation. Hartford further represented that it expected to render its appeal decision by April 24, 2011. (AR. 237). On March 17, Hartford received notice that Plaintiff had filed this lawsuit and therefore suspended its medical review of Plaintiff's file. (AR. 236). Thus, contrary to Plaintiff's assertion, the evidence of record fails to establish that Hartford "unilaterally delayed ruling on

Plaintiff's appeal for so long that ..it would be viewed . . .as be[ing] constructively denied." *Seiser v. UNUM Provident Corp.*, 135 F. App'x 794, 799 (6th Cir. 2005).[4]

Based on such facts and circumstances, the undersigned finds that Plaintiff did not complete the administrative review process and judicial intervention is therefore improper at this time. *See Miller*, 925 F.2d at 986. *See also Rist v. The Hartford Financial Svcs. Group*, No. 1:05-cv-492, 2008 WL 4444810, at *8 (S.D. Ohio 2008) (ERISA exhaustion requirement not met where a plaintiff pursues administrative remedies, but then fails to wait for an administrative determination before filing a lawsuit).

Accordingly, for the foregoing reasons, the instant case should be remanded to Hartford to complete the administrative review of Plaintiff's appeal. On remand, Hartford should also be mindful of its conflict of interest as both the Plan Administrator and Plan Insurer, *See Metropolitan Life Insurance Co.,* 554 U.S. at 108 105, as well as

---

[4]The undersigned recognizes that a party need not exhaust a benefit plan's administrative remedies before filing an ERISA claim in federal court for individual benefits when "resorting to the plan's administrative procedure would simply be futile or the remedy inadequate.*" Coomer v. Bethesda Hosp., Inc.*, 370 F .3d 499,  505 ( 6th Cir. 2004)(quoting *Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 419* (6th Cir.1998)). "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* Thus, in order to establish a finding of futility, a Plaintiff must show that his or her claim will certainly be denied on appeal, not merely that he or she doubts an appeal will result in a different decision. *Id.* Here, however, Plaintiff does not assert that exhaustion would be futile in this case, nor does the undersigned find that the administrative remedy would be inadequate.

the determination by the Social Security Administration that Plaintiff is disabled.  *See Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008).

## III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED** that:

1.  The Defendants' Motion for Judgment on the Administrative Record (Doc. 21) be **DENIED;**

2.  The Plaintiff's Cross-Motion for Judgment on the Administrative Record (Doc. 22) be **DENIED;** and

3.  This matter be **REMANDED** to Hartford to complete the administrative review process.

                                  */s Stephanie K. Bowman*
                                  Stephanie K. Bowman
                                  United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SHEILA VAUGHT,

    Plaintiff,

v.

THE HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY,

    Defendant.

Case No. 1:11-cv-227

Weber, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).